598 A.2d 784

**Keith Andre HILL**

v.

**STATE of Maryland.**

**No. 1990, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Dec. 2, 1991.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before GARRITY, FISCHER and CATHELL, JJ.

GARRITY, Judge.

We shall be concerned with whether police may conduct a custodial interrogation of a suspect as to the location of a weapon without first administering *Miranda* warnings. The matter arises as the result of the conviction of appellant, Keith Andre Hill, of robbery with a deadly weapon and related offenses.

### *Facts*

On April 11, 1990, shortly after midnight, Sean Kennedy was robbed by three armed men. During the ensuing struggle Mr. Kennedy managed to escape and report the incident to the police.

Officer Kevin Matthews of the Prince George's County police testified that immediately following a broadcast description of the three armed suspects, he observed three men run in front of his vehicle and then scale a ten-foot fence of the Smithsonian complex.[1] Corporal Montgomery and Corporal Graham, responding to a report of the robbery by three armed men, also entered the Smithsonian complex. The suspects were located and ordered to halt. Officer Montgomery recognized that one of the men possessed a weapon in his hand, prompting Montgomery to discharge his gun toward them. All three suspects retreated farther into the complex. Appellant Hill and an accomplice were located and apprehended. Officer Montgomery testified

---

1. The Smithsonian complex is a Federal Annex comprised of approximately one hundred acres devoted to the storage of artifacts and aircraft of historical importance.

that because he did not know the whereabouts of the third armed assailant, he was concerned about the immediate safety of all parties. He then asked appellant where the third suspect was; appellant replied, "He went that direction." As a result, the third person was taken into custody.

Corporal Robert Brown of the Prince George's County police also assisted in the appellant's arrest. While he was walking the handcuffed appellant to his police vehicle, knowing that only one of three weapons had been recovered,[2] he asked him where the guns were. In response, appellant stated that the other suspects had them and he did not know where they were. It is undisputed that Officers Brown and Montgomery had not given the appellant or his accomplice their *Miranda* warnings before asking about the location of the third suspect or the location of the other weapons.

## DISCUSSION OF LAW

Appellant argues that the trial judge's determination to admit the two statements made to the police was error. Specifically, he asserts that the admission of the statements violated his constitutional right against self-incrimination, as Hill was not read his *Miranda* warning prior to speaking to Officers Montgomery and Brown.

■ The initial determination in any *Miranda* violation case is whether the questioned party was in custody. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If the suspect answers questions while not in custody, such statements may be admitted.

■ Evidence obtained from a criminal suspect stemming from custodial interrogation prior to being advised of his *Miranda* rights is generally inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

---

**2.** An Uzi machine gun was found along the path that the suspects used to effectuate their escape.

Despite the undisputed facts that appellant's statements were compelled by the police while he was in custody, the Supreme Court has recognized a "public safety" exception to the *Miranda* warning. *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). In *Quarles*, the police cornered an armed rape suspect in a a supermarket. When the police stopped, frisked and handcuffed the suspect, they discovered an empty shoulder holster. Concerned for their own physical safety and before reading him· his *Miranda* rights, they asked him where the gun was. Quarles nodded toward some empty cartons and said that "[t]he gun is over there." *Id.*

In applying the "public safety" exception, the Court noted:

[T]here is a "public safety" exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved. In the kaleidoscopic situation such as the one confronting these officers, where spontaneity rather than the adherence to a police manual is necessarily the order of the day, the application of the exception which we recognize today should not be made to depend on *post hoc* findings at a suppression hearing concerning the subjective motivation of the arresting officer. Undoubtedly most police officers, ... would act out of a host of different, instinctive, and largely unverifiable motives—their own safety, the safety of others, and perhaps as well the desire to obtain incriminating evidence from the suspect.

Whatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers asked questions reasonably prompted by concern for the public safety.

*Id.* at 656, 104 S.Ct. at 2631. We believe the "public safety" exception to *Miranda* applies to the statement made by the appellant to Corporals Montgomery and Brown.

■ Although the "safety exception" issue herein is novel case law in Maryland, it is not the first time it has been visited. Prior to the Supreme Court's 1986 decision in *Quarles,* we reviewed the issue in *Whitfield v. State,* 42 Md.App. 107, 400 A.2d 772 (1978), wherein a statement by a person concerning the location of a gun in a prison was held admissible despite the lack of *Miranda* warnings. Speaking on our behalf, the late Chief Judge Gilbert observed that the emergency situation demanded prompt and drastic action. He stated:

> The gun's presence in the penal institution is a "bell ringer" that an escape attempt is imminent, with the strong possibility that one or more homicides may occur. It behooves the officials to move with alacrity to locate the weapon and confiscate it in order to protect their own lives, the lives of the prison populace, visitors who might be in the institution at the time, and the public generally.

The Court of Appeals, however, in *Whitfield v. State,* 287 Md. 124, 411 A.2d 415 (1980), denied the existence of a "public safety" exception to *Miranda* in Maryland. As the Supreme Court's subsequent recognition of a "public safety" exception to *Miranda* in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), overrules the Court of Appeals holding, it is now clear that the "public safety" exception applies to *Miranda.*

The trial court determined that the police officers were faced with a situation wherein a reasonable police officer would have perceived as posing a danger to the police team and to people who traversed in the area where the robbery and flight had occurred. Moreover, the officers questions were propounded to eliminate the obvious dangers of the situation. In short, the reactions of the police were out of concern for public safety and to mitigate any possible volatile situation that could have arisen. The trial judge found that the exigencies of the situation justified the failure to advise appellant of his *Miranda* rights until after the two questions at issue were asked.

■ Upon review, we agree that the police officers' reactions and questions were in response to an emergency situation, rather than an investigation as the appellant postulates, because the officers reasonably believed that the third suspect who fled under cover of darkness was armed and dangerous and could have retaliated by opening fire. We are not persuaded by appellant's final contention that the weapon could only have been within a fenced and guarded federal complex and therefore would not have posed a danger to the general public. The record reflects that after the suspects had been apprehended, the evidence unit recovered an Uzi machine gun along the path that the three men had used to flee. Therefore, it was not unrealistic for the police to have assumed that the weapons could have been located anywhere from the crime scene to the complex itself. Furthermore, the officers testified that their questions were not only out of concern for the safety of the police team, but also for the employees or guests of the Smithsonian who would be touring the complex the next day.

> As observed by Chief Justice Rehnquist in *Quarles*,
> [t]he exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it. We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety, or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect.... The exception which we recognize today, far from complicating the thought process and the on-the-scene judgments of police officers, will simply free them to follow their legitimate instincts when confronting situations presenting a danger to the public safety.

*New York v. Quarles*, 467 U.S. at 658–59, 104 S.Ct. at 2633 (1983) (citations omitted).

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.